J. T. HOLLOWAY v. THE STATE.

No. 4051. Decided November 11, 1908.

**1.—Assault to Rape—Charge of Court—Definition of Offense.**

Where upon trial of attempt to rape by force the court charged the jury that a mere invitation to have carnal intercourse would not constitute the offense unless the defendant attempted to have carnal knowledge of the

party injured against her will and without her consent and refused requested charges practically the same in substance there was no error.

### 2.—Same—Evidence—Opinion of Witness.

Upon trial of attempt to rape there was no error in permitting prosecutrix to testify that she knew what defendant meant by a certain remark he made to her, the bill of exceptions not showing that she gave her opinion as to what the defendant did mean.

### 3.—Same—Evidence—Flight—Guilty Knowledge.

Where upon trial of attempt to rape the State was permitted to show that the father of prosecutrix stepped out of the yard with his gun to shoot a hawk, while defendant and another came down the road towards him, and that as soon as they saw him with a gun they wheeled their horses and started back in a gallop, there was no error, as the objection that the State had not shown that said party with a gun was related to prosecutrix or that he would do violence to the defendant on account of said crime, only went to the weight of the testimony and not to its admissibility.

### 4.—Same—Evidence—Credibility of Witness—Cross-Examination.

Upon trial of attempt to rape it was shown by the evidence that two of defendant's witnesses by whom he attempted to prove an alibi had been with defendant on the night of the offense, that one of them left with the defendant and the other furnished the intoxicants with which prosecutrix's husband became drunk, there was no error in permitting State's counsel on cross-examination to ask them the question that if they did agree with the defendant that they would hold said husband until defendant had raped his wife they would not admit it. This went to the credibility of the witnesses; besides the witnesses answering in the negative defendant could not complain.

### 5.—Same—Evidence—Declaration of Third Party—Hearsay—Opinion of Witness.

Where upon trial of attempt to rape the State was permitted to introduce a conversation between the witness and the county attorney not in presence and hearing of defendant, as to what they believed about defendant not coming to the examining trial, and whether he would wear the same hat that he wore on the night of the alleged offense; and that when he stepped from the train on the platform that the witness remarked, "There he is now with that same white hat that he had on the night the offense was committed and Mrs. S. will surely identify him now"; this was hearsay and the opinion of the witness, inadmissible and reversible error.

### 6.—Same—Argument of Counsel.

Upon trial of attempt to rape, the argument of State's counsel that if the jury did not convict the defendant he would be liable to take the wives of the jurors from their homes for the purpose of committing this crime, was out of the record and improper.

### 7.—Same—Definition of Offense.

See opinion for the distinction between assault to rape and attempt to rape, as laid down in a former opinion of this court. Following Warren v. State, 41 S. W. Rep., 635.

Appeal from the District Court of Gonzales. Tried below before the Hon. N. Kennon.

Appeal from a conviction for an attempt to rape; penalty, five years imprisonment in the penitentiary.

The indictment, leaving out formal averments, charged that J.

T. Halloway on or about the first day of March, A. D. 1907, and anterior to the presentment of this indictment, in the county and State aforesaid, did then and there unlawfully by means of force and fraud attempt to have carnal knowledge of Marcy Smith, a woman, without the consent of the said Marcy Smith, said attempt not constituting an assault with intent to commit the offense of rape, against the peace and dignity of the State.

The opinion states the case.

*P. J. Greenwood* and *J. W. Rainbolt,* for appellant.—On question of permitting State's witness to testify that she knew what defendant meant:  White v. State, 11 Texas, 770; Martin v. State, 44 Texas, 173; Harris v. State, 8 Texas Crim. App., 108; Ward v. State, 10 Texas Crim. App., 279; Lott v. State, 17 Texas Crim. App., 601. On question of argument of counsel: Wilson v. State, 53 S. W. Rep., 122; Neal v. State, 50 Texas Crim. Rep., 583; 99 S. W. Rep., 1012.

*F. J. McCord,* Assistant Attorney-General, *R. F. Nixon,* County Attorney, for the State.

BROOKS, JUDGE.—Appellant was tried and convicted of an attempt to rape, and his punishment assessed at five years confinement in the penitentiary.

The testimony of the prosecutrix, Marcy Smith, is, in substance, as follows:

"About eleven o'clock at night, on March 1, 1907, some one came to my house and holloed, and I went and woke up my father-in-law, Mr. E. W. Smith, and told him some one was at the front gate, and for him to see what he wanted.  Mr. Smith went out to the front gate and came back and delivered me a message to the effect that my husband was sick and wanted me to come to Mr. George Gray's house where he was.  My father-in-law, the baby and myself started, Mr. Smith carrying the baby.  After we had started on the road leading to Mr. Gray's house, a man whom I took to be Tonnie Gray, riding horseback, said to my father-in-law to let him carry the baby, and after he, the defendant, had the baby, he said to me to get up behind him on his horse; that he could carry me to Mr. George Gray's much quicker than I could walk, and I refused, saying that I was afraid of the horse, but the defendant insisted on me riding, saying that the horse was perfectly gentle, and that he would not run.  I was excited and worried about my husband's condition and wanted to get to him as quick as I could.  I consented to ride behind the defendant, believing at the time that he was Tonnie Gray, and I got behind him and we started off in an ordinary gait for a short distance, and then started off in a gallop, and we had not gone very far before the defendant turned off to the right,

off of the well traveled road on a dim path, leading in the direction of an old lake, called Sour Lake, where some outhouses were situated, belonging to Mr. Hendershot, and I immediately told him that he was not on the road leading to Mr. Gray's house and for him to let me down, and that I didn't want to go any further, and he said no and continued to go in a lively gait—and said to me, your husband was not sick, but drunk, and that his name was Johnson from Luling— until we got to an old gate leading into a field and then stopped, and he got down to open the gate and handed me my baby, before getting off the horse, and then I jumped off the horse and started to run, when the defendant said to me, 'It is all right with me if it is all right with you,' and I said no, and broke and run in the direction of Mr. John Glover's house as fast as I could and he ran after me some distance and then got his horse and followed me through the brush. I was very much excited and crying and run all of the way to Mr. John Glover's house, the distance of three or four hundred yards, and woke them up and called for Mrs. Glover and told her all that had transpired, and then I went into the house and I was crying, and Mr. Glover asked me what was the matter, and I told him that some one had insulted me, and he asked me who it was, and I told him that I did not know his name, but he said his name was Johnson from Luling. Shortly after I got in the house my father-in-law came to the house, and I told him what had happened, and returned to my home with him. I did not find out that it was not Tonnie Gray, that had offered to take me to my sick husband, until the defendant turned off of the main road and then I saw my mistake. This defendant was dressed in a dark suit of clothes, with a white broad brim hat on, and had boots on with his breeches in his boots, and was riding a brown horse. I identified this defendant at Harwood, on the day of the examining trial, to be the man who committed the crime, and I now identify him as the man. This occurred in Gonzales County, on the first day of March, 1907. The defendant had on a black hat on the day of the examining trial, and I have testified to the same facts today as I did on the examining trial, and I have always said that he run after me and tried to catch me at the gate." The husband of the prosecutrix testified in substance, that he was away from home on the night of the attempt to rape drinking but not sick. The defendant Holloway and one Leehin were at the home of George Gray the night of the alleged crime prior to its commission. They were there drinking. The husband of prosecutrix was quite drunk. This is, in substance, the testimony for the State. The defense relied upon an alibi.

Appellant asked the court to give the following charges, which were refused, to wit: "A mere invitation extended by a man to a woman to have carnal intercourse with her or a request from him to her for that purpose, does not constitute the crime of attempt to rape; therefore, even though you should believe from the evidence in this

case that the defendant made such proposition to the prosecuting witness, then you will acquit the defendant, unless you further find that said defendant at such time attempted to use such force to accomplish his purpose, as if not prevented would have been sufficient to accomplish such purpose." The other charge is as follows: "In this case you are charged that a mere proposal from a man to a woman to have carnal knowledge of her, does not constitute an offense under the law and before you can convict the defendant you must find that in addition to such proposal, if any was made, that the defendant by his acts evidenced an intention to have carnal knowledge of said Marcy Smith, by force and without her consent, and unless you so find that at said time he evidenced by his acts an intention to have such carnal knowledge with said Marcy Smith by the use of such force as might be necessary considering the relative strength of the parties and without her consent, and unless you so find beyond a reasonable doubt you will acquit the defendant."

In the main charge the court gave the following: "A mere invitation or request from a man to a woman to have carnal intercourse with him does not constitute an offense punishable under the law: so, if you should find from the evidence that on the occasion under investigation, the defendant did request or invite the said Marcy Smith to have carnal intercourse with him, but fail to find from the evidence, beyond a reasonable doubt, that he also made an attempt to have carnal knowledge of her by force, and against her will and without her consent, as the term attempt has hereinbefore been defined, you will acquit the defendant." This charge clearly covers both of the special charges asked by appellant. In submitting the case to the jury the court only submitted attempt to rape by force. The indictment alleged force and fraud.

Bill of exceptions No. 1 shows the following: After the prosecutrix had testified in behalf of the State, and among other things had stated, that defendant, when she ran off, remarked, "If it is all right with you, it is all right with me," the county attorney thereupon asked the prosecutrix the following question: "Did you know what the defendant Holloway meant when he said to you, 'If it is all right with you, it is all right with me?'" Appellant objected to this question, first, because it called for an opinion of said witness; second, it was alone the province of the jury to determine what the defendant meant by said remark, if the same was actually made, which objection was overruled by the court, and the prosecutrix answered that she knew very well what the defendant meant when he made said remark to her, to which action appellant excepted. We do not think it was reversible error for the witness to state that she knew what defendant meant. It would have been error for her to have given her opinion. The bill of exceptions does not show that she gave her opinion as to what appellant did mean, but merely says she knew what he meant. It

follows, therefore, there is no reversible error in the ruling of the court.

Bill of exceptions No. 3 shows that when the witness Newt Alsebrook was testifying for the State, and after witness had stated in his testimony, that at about 9 or 10 o'clock of the morning after the commission of the alleged offense, that he saw the defendant and the witness Charles Leehin coming down the road towards his father's, Joe Alsebrook's house; that the said parties came within fifty or seventy-five yards of said house, and that when about that distance from the house, his father got his gun and went out in the yard for the purpose of shooting a hawk, then counsel for the State asked the witness the following question: "What did the defendant Holloway and Leehin do when they saw your father come out in the yard with his gun in his hands?" Appellant objected to the question because the testimony was irrelevant and immaterial, and was calculated to prejudice the jury against defendant; because it had not been shown that either the defendant or the witness, Charles Leehin, knew the father of said witness, Joe Alsebrook; because it had not been shown that the defendant, or the said Charles Leehin knew that the said Joe Alsebrook was in any manner related to the prosecuting witness, Marcy Smith; because it assumed the fact that the defendant and the said Leehin saw the said Joe Alsebrook when he came into his yard with his gun, when there was no testimony that they or either of them ever saw the said Joe Alsebrook. All of said objections were overruled by the court, and said witness was permitted to state in answer thereto, that "just as soon as they saw father come out of the house with his gun, they wheeled their horses around and started back towards Harwood in a fast gallop." This testimony was admissible. The objections urged by appellant to same would merely go to the weight and pertinency of the testimony rather than to its admissibility. The scriptures say: "The guilty flee where no man pursueth." This being a scriptural truth, was applied in this case as well as others, and is a slight circumstance to show guilty knowledge on the part of the defendant of the crime that he had perpetrated, and it goes to show that he suspected Alsebrook would do him violence on account of said crime. It is true, if he did not know that Alsebrook was related to prosecutrix, or he did not see Alsebrook when he came out of the house, this would go to the weight of the testimony. On the other hand, if he knew he was related to prosecuting witness, or if he saw him come out of the house with a gun, said Alsebrook living in the neighborhood where the crime is alleged to have been committed, this would have been a circumstance to show guilty knowledge on the part of appellant.

Bill of exceptions No. 4, however, shows that Joe Alsebrook was the father of the prosecuting witness, and appellant complains of the introduction of the same testimony by Joe Alsebrook as stated in the last bill.

Bill of exceptions No. 5 shows the following: While George Gray was testifying as a witness for defendant, the county attorney propounded to him this question: "If you did agree with Holloway to keep Albert Smith, husband of complaining witness, Marcy Smith, at your house while he, Holloway, went to Smith's house and took his wife out and raped her, you would come into court and tell about it, wouldn't you?" To which question the following objections were made: 1. Because it was unwarranted by any of the testimony or any of the circumstances in the case. 2. Because it was calculated to and did inflame the minds of the jury against the defendant. 3. Because it was calculated to and did cause the jury to discredit the testimony of the said witness Gray. 4. Because said question assumed the fact that there was such an agreement between the witness and the defendant, Holloway, whereby witness was to keep Albert Smith, the husband of complaining witness, Marcy Smith, while he, defendant, went to his home and took Marcy Smith out for the purpose of raping her, while there was no fact or circumstance justifying such an assumption, or that the defendant ever knew that the said Albert Smith ever even had a wife. All of which objections being overruled, the witness stated that he would not.

Bill of exceptions No. 6 shows that after Charles Leehin testified for the defendant, the county attorney asked him the following question: "Now Charles, if it is a fact that you did go off up there in the brush to keep watch while Bud Holloway (meaning defendant) went down to Albert Smith's house and took his wife out and raped her, you would come into court and tell all about it, wouldn't you?" To which question appellant presented practically the same objections he did to the above testimony, all of which being overruled, the witness answered that, "If I should do such a thing, I would crawl into a hole and never show my head again." The evidence in this record shows that Charles Leehin was a companion of appellant; they were seen together at George Gray's the night of the attempt to rape; they left there together, or at least the circumstances suggest that they did. The evidence further shows that George Gray was furnishing the whisky or wine upon which the prosecutrix husband became drunk. In the light of this evidence we do not think it was amiss for the county attorney, on cross-examination, to propound the questions above copied. It was a legitimate cross-examination of the witness to test his credibility. The answer of Charles Leehin indicates that he would be ashamed if he did such a thing. This would be a circumstance to give credence to his testimony and would not be a fact of which appellant could complain. Great latitude is allowed on cross-examination. Any question that throws light upon the credibility or probability or veracity of a witness, concerning the matter that he is called upon to testify to, that is not hearsay, is admissible on cross-examination. We must say that this testimony comes clearly within the rule.

Bill of exceptions No. 7 shows that while W. C. Brown was testify-

ing in rebuttal for the State, and had testified that he was in Harwood on June 16, 1907, the day upon which the examining trial of defendant was had, and after the witness had testified that he saw defendant get off the train that day, said witness was asked by R. F. Nixon, county attorney, who was conducting the examination for the State, the following question: "If he noticed the kind of hat the defendant had on when he got off the train." To which appellant objected, because it was irrelevant and immaterial testimony; because said question was calculated to and did raise in the minds of the jury a prejudice against the defendant, which objections being overruled, the witness stated that, "When the defendant got off the train that evening, he had on a white hat." Thereupon, the county attorney asked the following question: "How came you to take notice of the kind of hat the defendant had on that day?" Appellant objected to this, because irrelevant and immaterial; because it could prove no fact in this case, and was calculated to and did prejudice the minds of the jury against the defendant, which objections were overruled, and the witness answered, "You (meaning R. F. Nixon, county attorney) you and I were there near the depot waiting for the train to come in; we said one to the other, that we did not believe that the defendant would come to his trial, and wondered if he would have on the same white hat that he had on the night of the commission of the alleged offense; that when he stepped out on the platform of the car, I remarked, 'There he is now with that same white hat that he had on the night the offense was committed, and that Mrs. Smith will surely identify him now.'" Said witness was further asked the following question by State's counsel: "What kind of a hat did the defendant have on the next time you noticed him that evening?" To which question and answer the same objections were interposed as stated above. The witness answered, "The next time I saw the defendant he had on a black hat, which was shortly after he reached the town of Harwood." It was permissible for the State to prove the character of clothing and color of hat appellant had on the day of the examining trial, since the record shows that on the night of the attempt to rape he had on a white hat. It is further permissible and proper to prove that during the progress of the examining trial, or at any time during the trial, he changed the white hat and put on a black one, but it was very improper to permit the witness to state that, "We did not believe that the defendant would come to his trial, and wondered if he would have on the same white hat that he had on the night of the commission of the alleged offense; that when he stepped out on the platform of the car, I remarked, 'There he is now with that same white hat that he had on the night the offense was committed, and that Mrs. Smith will surely identify him now." This was hearsay evidence; out of the presence of the defendant. In no way could he be bound by the statement. It is what the law terms res inter alios acta and highly prejudicial. Cer-

tainly, it is not proper for the witness to express a doubt as to whether the defendant would come to his trial, thereby indicating his opinion that defendant was guilty and, therefore, would flee. Nor was it proper to say that "Mrs. Smith would surely identify him now." This is an opinion and highly prejudicial to the rights of appellant. As stated, if the witness saw him change hats, or saw him have on a hat of any character or color, he could testify to this fact, but certainly can not give, in that connection, an opinion, as above stated. It follows, therefore, that the court erred in admitting this part of the witness' testimony. As stated by appellant, it was highly prejudicial to the rights of defendant, was hearsay, and utterly inadmissible.

Bill of exceptions No. 8 shows that the county attorney in his closing argument to the jury, used the following language: "If you find this defendant not guilty, he is liable to come to your house or my house and take your wife away from her home for the purpose of committing this crime." To which appellant objected on the ground that same was unauthorized by the testimony, and was calculated to inflame the minds of the jury against defendant and prejudicial to his rights. Appellant tendered the court a special charge asking that the court instruct the jury to disregard the remarks of the county attorney, which the court refused to do.

Bill of exceptions No. 9 shows that the county attorney, in his argument, used the following language: "The defendant and his witness Wood Caperton were gambling companions." Appellant objected to this for the reasons stated in reference to the above quoted language. This bill is approved with the statement that, "The charge was refused because the court verbally admonished the county attorney that there was no evidence upon which to found the statement." Neither of said statements is legitimate argument, but in the light of the qualification of the court to the last bill, perhaps same is rendered harmless. But the language, as indicated in bill of exceptions No. 8, was entirely out of the record and ought not to have been used.

We have very carefully examined the court's charge in this case, and we find that same is an admirable presentation of all the law applicable to the facts, and none of appellant's criticisms of the charge are well taken. Appellant complains that the verdict of the jury is contrary to the law and the evidence. We do not think it necessary to pass on this question in view of another trial. In the case of Warren v. State, 41 S. W. Rep., 635, Judge Hurt, in discussing the distinction between assault to rape and attempt to rape, uses the following language, which we quote in full for the purpose of showing the distinction between an assault to rape and an attempt to rape, to wit: "We have no law in this State providing or declaring in these words 'that an attempt to commit rape is an offense.' If we had such an Act, merely declaring that an attempt to commit rape would be

an offense, with the punishment affixed thereto, we might then conclude that if a party was guilty of attempting to have carnal knowledge of a girl under fifteen years of age, with her consent, that, as the consummated crime would be rape, therefore he would be guilty of an attempt to commit rape. But we have no such Act. Therefore appellant must be convicted under the law as we find it written. What is the law? Article 640 provides: 'If it appear on the trial of an indictment for rape, that the offense, though not committed, was attempted by the use of any of the means spoken of in articles 634, 635 and 636, but not such as to bring the offense within the definition of an assault with intent to commit rape, the jury may find the defendant guilty of an attempt to commit the offense, and affix the punishment prescribed in article 608,' which is 'confinement in the penitentiary for any term of years not less than two.' Article 640 draws a distinction between an attempt to commit rape and an assault with intent to commit rape. It is not necessary for us in this opinion to point out the difference between the two offenses. Suffice it to say that the statute makes the difference. Now, to constitute this offense, an attempt to rape must be shown; and this attempt must be made by the use of one of the means spoken of in articles 634, 635 and 636. There were no threats or fraud used in this case, and therefore the State was forced to establish the fact that the attempt was made by the use of force— that force defined in article 634. Said article reads as follows: 'The definition of 'force' as applicable to assault and battery, applies also to the crime of rape, and it must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength, and all other circumstances of the case.' No person in this State can be guilty of an attempt to commit rape, unless the proof shows that an attempt was made by the use of force, and the force intended to be used must be reasonably calculated to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case. It must appear that it was reasonably sufficient to overcome resistance. A proper construction of this statute in connection with article 640 is that at the time of the alleged attempt it was the intention of the party to use the same force as would make him guilty of rape, or of assault to commit rape, but in the actual attempt he fell short of the use or application of such force as would bring the offense up to an assault with intent to rape; for when the force used amounts to an assault then it ceases to be a mere attempt, but would be an assault to commit rape; then the two offenses come together; when the attempt ceases, the assault begins and takes its place. And if the force actually used is such as to constitute the offense an assault with intent to commit rape, then it is no longer a mere attempt. The fact that the party was

under 15 years of age has nothing to do with this question. To constitute this offense, as we have said, the attempt must be made, and the intention to use that character of force above described must also be established by the proof. As we have said above, our statute does not stop by stating that you can punish an attempt to commit rape, but it specifically points out the manner, method, and means which must be intended to be used by the accused in order to constitute this offense. If the statute was general, and did not specifically point out and require that the party must intend to use force, such as is defined in article 634, we might then conclude that what was done by the accused in this case was an attempt to commit rape, because, as we have said above, rape can be accomplished on a girl under 15 years of age with her consent. But our statute is particular in regard to this matter, and requires that the proof must show that the defendant intended to use that particular force which is defined in article 634. To these acts and intentions our Code has affixed a penalty. This offense has been defined and the punishment affixed, and we know of no other attempt to commit rape, except as named in article 640." That portion of the above cited opinion, however, in reference to an assault on a female under 15 years of age, has no application to the case now at bar, and, in fact, has been overruled by subsequent decisions of this court, but we cite same as being a proper, terse and logical presentation of the distinction between an attempt and an assault to rape. For further definitions of an attempt to rape see Milton v. State, 6 S. W. Rep., 39; Moon v. State, 45 S. W. Rep., 806, and Waire v. State, 64 S. W. Rep., 1061.

For the errors pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*